## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 24-cr-00036 (LLA)** |
| **v.** | |
| **DREW MASON,** | |
| **Defendant.** | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Drew Mason be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving an explosive device). Mr. Mason is charged with carrying an illegal homemade explosive device around a busy Metro station just before rush hour. While carrying this explosive device, Mr. Mason also was in possession of distribution-quantities of marijuana, a scale, and bags for distribution. Further, he appears to have robbed someone while carrying the explosive device. When law enforcement responded, Mr. Mason callously tossed his backpack containing the explosive device behind some bushes. Anyone could have found that backpack and the explosive device. Fortunately, the backpack was recovered by law enforcement and processed by trained bomb technicians. Mr. Mason's reckless possession of this device, while actively engaged in other crimes, all at a crowded transportation hub presented a significant danger to our community. Given his danger and brazenness, there are no conditions of release that will safeguard our community should Mr. Mason be released.

For the following reasons, the Court should order Mr. Mason detained pending trial.

## BACKGROUND

### *The Instant Offense*

On Thursday, July 13, 2023, at 3:58 PM, Metro Transit Police (MTPD) was alerted by the station manager at the Rhode Island Avenue Metro Station that an individual was potentially getting robbed.

MTPD reviewed surveillance video and observed that a group of young men were surrounding another man.   One of the young men—later identified as Drew Mason—took money from the individual, before running away.   Based on the video, Mason was black, wearing a white shirt and black pants, with short twist hair, and a black and gray backpack.

*Figures 1 and 2, Mason Circled in Red and Robbery Victim in Yellow*



Surveillance video reflected that as MTPD responded, Mason walked over to a foot bridge next to the metro station.   Mason walked towards a stairway carrying his backpack and then

disappeared from view.   He reemerged shortly afterwards without a backpack.   He also changed his shirt after tossing the backpack.

*Figure 3: Mason Before Tossing Backpack; Figure 4: Mason After Tossing Backpack*



MTPD officers responded to the scene, located Mr. Mason, and stopped him to determine if they could find the individual who had witnessed the robbery or the individual from whom the money was taken.   Notably, Mr. Mason did not have his backpack on when MTPD officers arrived.

An MTPD officer began looking for the backpack around the foot bridge where Mr. Mason was located.   MTPD found the backpack behind some bushes.   The recovering MTPD officer opened and checked the backpack because it was an unattended item next to the Metro station.   Inside the backpack, MTPD found a large amount of cash and a large amount of what appeared to be marijuana.   He did not immediately notice the explosive device.

Meanwhile, Mason was released because no witness or victim could be found.   Despite being released, Mason returned to the scene, approached the MTPD officer who had retrieved his backpack, and insisted multiple times that it was his backpack and also correctly stating that his debit card was inside the backpack.   Mason even called his mother in an attempt to have her

verify that the backpack belonged to him.   Mason's interaction with MTPD officers is captured on video.

The backpack was subsequently searched and inventoried.   Inside the backpack was $607.05 in multiple denominations, a large plastic bag containing 3.704 ounces of marijuana, nine pre-packaged bags in various flavors labeled "Cannabis Flower," each weighing 0.125 ounces (total 1.125 ounces), multiple smaller clear plastic baggies, and a digital scale.

*Figure 5: Marijuana, Cash, Scale*



### The Explosive Device

Additionally, inside the backpack was an apparent explosive device.   ATF analyzed the device which was a brown cardboard tube approximately 2.5 inches long, 1.24 inches in diameter, and weighing 24.5 grams.   The carboard tube was sealed with glue with a red fuse extending from one end.

*Figures 6 and 7*



ATF disassembled the device revealing that it contained 6.2 grams of a dark grey powder which was determined to be an explosive mixture containing potassium perchlorate and aluminum (commonly known as flash powder).   The legal limit for possessing flashpowder is fifty milligrams.   Therefore, this device contained 124 times the legal limit for flashpowder.   A device like this is not legally or commercially sold.

Mr. Mason was initially charged in D.C. Superior Court with a local drug charge.   He was not charged in relation to the explosive device.   On January 18, 2024, Mason was indicted on three charges:   (1) Unlawful Possession with Intent to Distribute a Detectable Amount of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); (2) Carrying an Explosive During Commission of a Federal Felony, in violation of 18 U.S.C. § 844(h)(2); and (3) Unlawful Receipt of Explosives, in violation of 18 U.S.C. § 842.   On February 5, 2024, Mason went to MTPD headquarters to obtain his property back following the voluntary dismissal of the D.C. Superior

Court charge.   He was arrested.

After being arrested, Mason demanded to know why he was being charged.   An agent stated that he was being charged in relation to explosives.   In response, Mason acknowledged that an explosive device was in his backpack, he had purchased the device from someone on the street and that he had not even used the device before he was arrested at the Metro.   This exchange was captured on body-worn camera.

## **ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).   "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'"   *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

In determining whether any condition or combinations of conditions will assure the appearance of a defendant or safety of the community, the Court weighs four factors:   (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.   *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."   18 U.S.C. § 3142(f).   Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer.   *United States v. Smith*, 79 F.3d 1208, 1210 (D.C.

Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).   *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.   *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

A review of the 3142(g) factors makes clear that no condition or combinations of conditions will assure the safety of the community or ensure Mr. Mason's appearance were he to be released.

I.      **The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention.

As an initial matter, the crimes for which Mr. Mason has been indicted by a grand jury are incredibly serious.   Mr. Mason faces a mandatory minimum of ten years' imprisonment for one of these charges, a sentence which must run concurrent to any other offense.   This indicates just how serious this offense is, and just how dangerous Congress viewed the individuals who commit such offenses.   *See, e.g.*, *United States v. Wills*, 311 F. Supp. 3d 144, 148 (D.D.C. 2018) (finding that even a five-year mandatory minimum "reflect[ed] Congress' judgment as to the seriousness of the offense"); *United States v. Gage*, No. CR 18-112-03 (RMC), 2018 WL 6201059, at *4 (D.D.C. Nov. 28, 2018) (noting that a "a mandatory minimum of ten years imprisonment . . . demonstrat[es] the seriousness of the offense.")

Congress' view of Mr. Mason's dangerousness is borne out by the facts of the instant

offense.   Mr. Mason was in possession of an illegal and apparently homemade explosive device. This was not a firework.   It contained 124 times the legal limit for flashpowder.   Flashpowder is a notoriously unstable and volatile mixture that is sensitive to static, heat, friction, and impact. Mr. Mason is not an individual licensed to carry such explosives.   And there is no reason to believe he has any training or experience with explosive devices.   Yet Mr. Mason was carrying this explosive device as he was actively engaged in committing other offenses:   apparently robbing a man and possessing drugs with the intent to distribute them.

Mr. Mason was not carrying this device while he sat at home, or in some remote area.   Mr. Mason carried this explosive device in and around the Rhode Island Avenue Metro station.   More than 4,000 people enter that Metro station every day.[1]   Many thousands more make use of the bus station and parking available there.   Within eyeshot of the Metro is a movie theater, indoor skating and pickleball courts, a food hall, and a DMV outpost.   Mr. Mason's reckless and untrained carrying of this device posed a danger to every one of those people, including the many people he interacted with that day.   And despite knowing that he had that explosive device in his backpack, Mr. Mason callously and recklessly tossed it behind some bushes.   Anyone could have found that backpack and the explosive device.   It is fortuitous that MTPD recovered the backpack and called trained bomb technicians to safely transport it.

The nature and circumstances of the offense merit detention.

## II.      **The Weight of the Evidence Against the Defendant is Formidable.**

The second factor to be considered, the weight of the evidence, also weighs in favor of

---

1 Daily ridership statistics are available on WMATA's website, available at https://www.wmata.com/initiatives/ridership-portal/daily-summary.cfm.

detention.[2]    The Government's case against Mr. Mason is very strong.

With respect to the drug charges, Mr. Mason is captured on surveillance video engaged in what appears to be a failed drug transaction.    A backpack matching a backpack he is seen wearing on video is recovered from an area where he disappeared while wearing the backpack.    The backpack contained distribution amounts of marijuana, both loose leaf in a large bag and pre-packaged and branded quantities.    The backpack also contained a digital scale, smaller bags for the distribution of marijuana, and a significant amount of cash.    Mr. Mason repeatedly admitted that the backpack belonged to him, correctly indicating that his debit card was in the bag.    Mr. Mason even attempted to have his mother corroborate that the backpack was his.    Mr. Mason's repeated admissions are captured on body-worn camera.

With respect to the explosive charges, the explosive device was in the same backpack that Mr. Mason repeatedly admitted was his.    Further, Mr. Mason made additional admissions after he was arrested, explicitly acknowledging that the explosive device was in his backpack, stating that he had purchased it, and even indicating that he had intended to use the device but for law enforcement's intervention.

---

[2] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."    2023 WL 1778194, at *8.    Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."    *Id.* at *10.    In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision.    *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).    The Second Circuit reached the same decision after a thorough and careful analysis of the issue.    *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true."  *Blackson*, 2023 WL 1778194, at *10.  Further, "[i]f the government possesses overwhelming evidence that the defendant is guilty of the crime charged—and the nature of the charged offense involves a danger to the community—then the second factor will help meet the government's burden of persuasion." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).   The Government has compelling evidence that Mr. Mason is the type of person with access to explosive devices and no compunction about how he carries them.   This is compelling evidence that Mr. Mason is a danger to the community, particularly given the significant penalties Mr. Mason faces.

### III.   The Defendant's History and Characteristics Merit Detention.

Mr. Mason does not have significant criminal history.   But at the age of 20, he has already been arrested fifteen times.   And the Court should be wary of someone who has the ability and willingness to source homemade explosive devices.   While he has not be charged with additional offenses since July 2023, his supervision record while in D.C. Superior Court reflects that he failed to verify his address and failed to report.   Mr. Mason's statements concerning this offense also reflect a chilling brazenness.

Despite knowing that he had drugs and an explosive device in his bag, Mr. Mason had no concerns telling officers that the backpack belonged to him, not just once, but twice.   On the first occasion, Mr. Mason had been detained but then released for a robbery.   Fortuitously, the alleged victim did not remain on scene.   He could have simply walked away from the officers and avoided

arrest.   But Mr. Mason wanted his drugs and explosive device back.   So, he approached the officers and demanded that they return his contraband-filled backpack, fully aware of the drugs and explosive device in his backpack.   Even after being arrested and charged for that offense, Mr. Mason continues to make brazen admissions about these offenses.   When he was informed that he was charged in relation to an explosive, Mr. Mason had no hesitation in telling law enforcement that he had purchased the device and that he intended to use it.   His unapologetic shameless tone reflects an individual who is a danger to the community and unlikely to abide by conditions of release.

**IV.**   **Mr. Mason Presents a Danger to Our Community and a Risk of Flight**

The fourth and final factor, danger to any person or the community posed by Mr. Mason's release, similarly weighs in favor of detention.

Mr. Mason has access to explosive devices, commits violent offenses in broad daylight while in areas with high-quality surveillance video, and brazenly implicates himself in crimes to law enforcement.   He recklessly carried an explosive device while committing other offenses and then callously tossed that device behind some bushes for anyone to find.   He is now facing a significant mandatory term of imprisonment for his offenses.   Mr. Mason presents a danger to our community and should be detained pending trial.

<div align="center">

**CONCLUSION**

</div>

For all the foregoing reasons, the Government respectfully requests that the Court detain Mr. Mason pending trial on these charges.

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

</div>

<div align="center">11</div>

D.C. Bar No. 481052


By:        /s/ Cameron A. Tepfer
           Cameron A. Tepfer
           D.C. Bar No. 1660476
           Assistant United States Attorney
           601 D Street NW
           Washington, D.C. 20530
           202-258-3515
           Cameron.Tepfer@usdoj.gov

12